CITIZENS BANK OF BOONEVILLE, ARKANSAS, Plaintiff,

v.

NATIONAL BANK OF COMMERCE, TULSA, OKLAHOMA, Defendant.

Civ. No. 5445.

United States District Court
N. D. Oklahoma.

May 14, 1963.

**194**

J. H. Evans, Booneville, Ark., and Sanders & McElroy, Tulsa, Okl., for plaintiff.

Pinkerton & Pinkerton, Tulsa, Okl., for defendant.

BOHANON, District Judge.

On the 5th day of April, 1963, the Motion for Summary Judgment filed herein by the plaintiff, Citizens Bank of Booneville, Arkansas, came on to be heard, and having fully considered the pleadings in this cause, the depositions and exhibits submitted by plaintiff with its Motion for Summary Judgment, and the Briefs submitted by counsel, the Court denied the plaintiff's Motion for Summary Judgment.

Thereupon counsel for plaintiff offered in evidence the depositions and exhibits submitted with plaintiff's Motion for Summary Judgment and rested. Defendant offered no objection to the admission of said depositions and exhibits. Thereupon, defendant moved to dismiss the above entitled cause on the ground that upon the facts and the law the plaintiff had shown no right to relief and the Court, having fully considered the evidence, the arguments of counsel orally and as set forth in their respective Briefs filed herein, now makes the following:

*Findings of Fact*

1. This is a diversity action between citizens of different states, and the amount in controversy, exclusive of interest and costs, exceeds the sum of $10,-000.

2. Sam Gilbert was a customer of the plaintiff bank. The evidence shows that he was a bad credit risk and the plaintiff bank was having trouble collecting on loans it had made to him. It had brought suit against Gilbert on some of his obligations and the action or actions were pending by the bank against Gilbert during the month of March 1962; plaintiff bank had loaned Gilbert a sizeable sum of money on cattle located on Gilbert's ranch near Booneville, Arkansas; plaintiff's cashier, Bill Landrum, from time to time attempted to determine the cattle which Gilbert had as security for his note but experienced some difficulty in doing so.

3. On March 24, 1962, after Gilbert's cattle note was past due, Mrs. Gilbert inquired of Mr. Landrum of the amount of principal and interest it would take to pay off the cattle loan on March 22, 1962. She stated that she and Gilbert were "selling some things." She did not disclose what was being sold.

4. On March 27 Mr. Gilbert came to the plaintiff bank and presented Mr. Landrum with a check payable to his order signed "Phil Talley," dated March 25, in the sum of $15,250. He told Mr. Landrum that the cattle were sold and delivered on March 24, 1962.

5. The check signed "Phil Talley" was not a genuine check because the signature of the maker was a forgery.

6. Mr. Landrum in Mr. Gilbert's presence called defendant's cashier, Garland Hill, and stated to Mr. Hill that he had a check drawn on defendant bank by

Phil Talley for $15,250, and asked if the account was sufficient to pay the check. Mr. Hill advised him that there was a sufficient sum in the account to pay the check.

7. After Gilbert left plaintiff's bank, Mr. Landrum called an officer of his bank about the check. Thereafter Mr. Landrum immediately started driving to Tulsa to the defendant's bank. Upon arriving at the defendant bank a short while before closing time on the same day, Mr. Landrum went to Mr. Hill's office, the defendant's cashier, and in effect advised him that he had a check drawn on Phil Talley and wished to obtain the defendant's cashier's check therefor. Mr. Landrum did not advise Mr. Hill relating to the reputation of Mr. Gilbert, as plaintiff's customer, as a credit risk, or the reason why he did not process the check through regular banking channels.

8. *Mr. Landrum endorsed the check for and on behalf of the plaintiff bank,* and thereupon received from the defendant bank its cashier's check in the amount of $15,250. No charge was made by the defendant bank for the issuance of this cashier's check.

9. *Mr. Landrum identified himself as cashier of the plaintiff bank, and the defendant relied upon his statements and the endorsement of the plaintiff bank upon the check involved and therefore believed that the said check was a genuine check of the defendant's depositor.*

10. Upon receipt of the cashier's check, Mr. Landrum left the banking house of the defendant. Within a few minutes thereafter the defendant bank discovered that the check was a forgery. Immediately upon discovery of the forgery, defendant notified plaintiff thereof and requested a return of the cashier's check, and advised plaintiff that defendant would stop payment on the cashier's check if presented for payment. The Court finds that the plaintiff received the notice before it had changed its position with respect to its debtor, Gilbert, in any way in reliance upon the issuance of the cashier's check.

11. The cashier's check was never paid, but was protested and returned to the plaintiff.

12. The cashier's check was issued to plaintiff without consideration and in reliance upon the implied representation of Mr. Landrum that the instrument was genuine, and in reliance upon the endorsement of the plaintiff bank.

13. The Court finds that the plaintiff was not a holder in due course of the check in question and accepted the same from its customer, Sam Gilbert, for collection only.

## Conclusions of Law

1. Plaintiff knew, or by the exercise of reasonable care and diligence exercised by bankers in these matters, should have known of some defect or infirmity in the check given to it by Gilbert.

2. Plaintiff acted in bad faith in representing that it had a genuine check of its depositor and in concealing information in its possession that would convince an ordinary and reasonable banker that the check was defective.

3. The plaintiff bank by its endorsement guaranteed all prior endorsements and the genuineness of the instrument.

4. The cashier's check was issued by plaintiff without consideration.

5. Plaintiff has changed its position in no manner in reliance upon the issuance of the cashier's check, and has lost none of its rights against its endorser, Gilbert.

6. The defendant rightfully and properly stopped payment on its cashier's check issued to plaintiff.

## JUDGMENT

It is ordered, adjudged and decreed by the Court that plaintiff's Complaint should be dismissed and that defendant should have judgment. That it properly stopped payment on its cashier's check in the sum of $15,250. That defendant is not obligated to pay said cashier's check, and that defendant should have judgment for its costs.

Let judgment be entered accordingly.